FILED

2009 Sep-03 PM 03:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| PEGGY DOUTHARD, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.:  4:09-CV-65-VEH** |
| | ) | |
| AMCOR PET PACKAGING, USA, | ) | |
| INC., | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

This cases arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), and more specifically the Retirement Equity Act of 1984 ("REA"), 29 U.S.C. § 1055, which is an amendment to ERISA.  Before the court are cross-motions for summary judgment on all claims by Plaintiff Peggy Douthard ("Ms. Douthard") against Defendant Amcor PET Packaging USA, Inc. ("Amcor").  (Docs. 7, 9).  The motions have been briefed.  (Docs. 10-12).  The motions are now ripe for decision by this court.

The court has carefully considered the parties' arguments and, for the reasons discussed in this memorandum opinion and order, Ms. Douthard's Motion for

Summary Judgment (Doc. 7) is due to be denied without prejudice.  Further, Amcor's Motion for Summary Judgment (Doc. 9) is similarly due to be denied without prejudice.

## II.   BACKGROUND

At the heart of the parties' dispute are whether Ms. Douthard is the widow of George Douthard ("Mr. Douthard") and whether Amcor properly paid the proceeds of Mr. Douthard's retirement and savings account to his named beneficiary—his daughter, Angela Douthard ( hereinafter "Angela" or "Angela Douthard").  Ms. Douthard maintains that when Mr. Douthard passed away she was his widow because they were never legally divorced.  <u>If</u> this is true, then the REA mandates (in the absence of a prior written consent executed by that spouse agreeing to waive such benefit)[1] that any "qualified preretirement survivor annuity shall be provided" to Ms. Douthard, as Mr. Douthard's surviving spouse.  29 U.S.C. § 1055(a)(2).

Mr. Douthard died on September 6, 2005.  (Doc. 9 at Ex. A at Ex. 1).  Mr. Douthard was employed by Amcor at the time of his death.  AF No. 2.2.[2]  When he

---

[1]  No issue of a valid spousal waiver exists in this case.

[2]  The designation "AF" stands for admitted fact and indicates a fact that both sides have agreed upon based upon their written submissions on summary judgment or by virtue of any other evidence offered in support of their respective cases.  The court's numbering of admitted facts (*e.g.*, AF No. 2.2) corresponds to the numbering of Amcor's response to Ms. Douthard's  statement of facts as set forth in Doc. 9 §

passed away, Mr. Douthard was also a participant in the Amcor PET Packaging Savings and Investment Plan (the "Plan") and held a retirement savings account governed by the Plan. AF Nos. 2.2-2.3. On October 6, 2004, Mr. Douthard modified the information that he had on file with Amcor's benefits department (the "Plan Administrator") and named his daughter, Angela (who is unrelated to Ms. Douthard), as the beneficiary of this retirement savings account. (Doc. 9 at Ex. A ¶ 6; *id.* at Ex. 4).

In April or May of 2006, Ms. Douthard contacted the Plan Administrator, asserting to be the widow of Mr. Douthard and seeking a distribution of his retirement assets. AF No. 3.1. As proof of her claim, Ms. Douthard provided to the Plan Administrator a copy of a marriage license dated October 19, 1961, listing Mr. Douthard as the groom and Ms. Douthard as the bride. AF No. 3.2. Ms. Douthard also produced to Amcor a certificate of marriage confirming their marriage on October 19, 1961. AF No. 3.3.

Support for Angela Douthard's claim to the proceeds included a copy a

---

II.A.  A number following a decimal point corresponds to the particular sentence within the numbered statement of facts. For example, (AF No. 2.2) would indicate the second sentence of paragraph 2 of Amcor's response to Ms. Douthard's statement of facts is the subject of the court's citation to the record.

marriage license issued by the State of Colorado on June 11, 1982,[3] listing Mr. Douthard as the groom and JoAnn Williams as the bride (Doc. 9 at Ex. A ¶ 10), and Mr. Douthard's death certificate reflecting his marital status as widowed.  (*Id.* ¶ 12; *see also id.* at Ex. 1).  As Angela Douthard reported to the Plan Administrator, Ms. Douthard and her father, Mr. Douthard, were divorced in the early 1970s,[4] and Angela Douthard's mother, JoAnn Williams, passed away in June 1993.[5]  (Doc. 9 at Ex. A ¶¶ 10-12).

Other proof favorable to Amcor's position (that payment to Angela Douthard was appropriate) were various tax forms and an Amcor job application dated April 2, 1979, that Mr. Douthard filled out in which he indicated his marital status as single (Doc. 9 at Ex. A ¶ 13; *id.* at Exs. 8-10) as well as his last will and testament dated June 18, 2004, in which he declared under oath "I am not married nor am I involved in a common law marital relationship."  (Doc. 9 at Ex. A ¶ 14; *id.* at Ex. 11).

In June 2006, the Plan Administrator denied Ms. Douthard's claim and paid the Plan assets in the approximate amount of $170,700.53 to Angela.  (Doc. 9 at Ex. A

---

[3]  The record does not reflect whether Amcor had this document at the time it denied Ms. Douthard's claim.

[4]  No evidence of any divorce documents are contained in the record.

[5]  There is no evidence in the record that either one of these statements made by Angela Douthard was made under penalty of perjury.

¶¶ 16, 5).  Ms. Douthard retained legal counsel and, on November 18, 2007, her attorney renewed Ms. Douthard's demand for the retirement proceeds.  (Doc. 9 at Ex. A ¶ 17).

Other correspondence and additional documentation in support of Ms. Douthard's claim then followed, including a claim made by Ms. Douthard in support of Social Security widow benefits and an affidavit executed by Ms. Douthard attesting that she had never divorced Mr. Douthard.  (*Id.* ¶¶ 20-21; *id.* at Exs. 16, 18).

Ms. Douthard filed her lawsuit against Amcor on December 11, 2008, in the Circuit Court of Etowah County.  (Doc. 1 ¶ 1; *id.* at Ex. A at Compl. at 1).  Amcor removed the litigation to this court on January 13, 2009 based on federal question jurisdiction.  (Doc. 1).

## III.   STANDARD ON SUMMARY JUDGMENT[6]

Summary judgment is proper only when there is no genuine issue of material

---

[6] Although there are cross-motions for summary judgment filed by both parties pursuant to Rule 56, the Eleventh Circuit recently noted that, due to the peculiar standards of review for ERISA cases, Rule 56 practice may be unnecessary.  *See Doyle v. Liberty Life Assur. Co.*, 542 F.3d 1352, 1363 n.5 (11th Cir. 2008).  Other district courts have similarly noted that the district court's role in an ERISA case is fundamentally different than its ordinary role as a trial court.  *See, e.g., Providence v. Hartford Life & Accident Ins. Co.*, 357 F. Supp. 2d 1341, 1342 n.1 (M.D. Fla. 2005) ("[T]he Court's task is to review the benefit decision based on the administrative record available to the decision maker at the time he or she made the decision.").

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).[7]  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

"Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'"  *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).  "If the movant bears the burden of proof on an issue, because, as a defendant, it is asserting an affirmative defense, it must establish that there is no genuine issue of material fact as to any element of that defense."  *International Stamp*, 456 F.3d at 1274 (citing *Martin v. Alamo Community College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003)).

---

[7] Rule 56 was recently amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure. The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*." Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis supplied). Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

Although there are cross-motions for summary judgment, each side must still establish the lack of genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Chambers & Co. v. Equitable Life Assur. Soc. of the U.S.*, 224 F.2d 338, 345 (5th Cir. 1955); *Matter of Lanting*, 198 B.R. 817, 820 (Bankr. N.D. Ala. 1996). The court will consider each motion independently, and in accordance with the Rule 56 standard. *See Matsushita Elec. Indus. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). "The fact that both parties simultaneously are arguing that there is no genuine issue of fact, however, does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit." *See* Wright, Miller & Kane, Federal Practice and Procedure § 2720, at 327-28 (3d ed. 1998) (emphasis added).

## IV. ANALYSIS

### A. Applicable Standard of Review

As a threshold issue, the parties dispute what is the appropriate standard of review for the court to apply. Ms. Douthard maintains that *de novo* review is called for while Amcor contends that discretionary or arbitrary and capricious review is required.[8]

---

[8] As a result of the Supreme Court's decision in *Glenn v. Metro. Life Ins. Co.*, ___ U.S. ___, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008), as interpreted by the Eleventh Circuit in *Doyle*, now only two ERISA standards of review now exist in the

More specifically, Ms. Douthard contends that "the *de novo* standard of review applies unless the benefit plan **expressly** gives the administrator discretionary authority." (*See, e.g.*, Doc. 11 at 5).  Amcor responds that to the contrary "Plaintiff is simply wrong" and that "[t]he Plan expressly vests the Committee with absolute discretion to make eligibility determinations."  (Doc. 12 at 3).

As the Eleventh Circuit explained in *Jett v. Blue Cross and Blue Shield of Alabama, Inc.*, 890 F.2d 1137 (11th Cir. 1989), regarding the *de novo* versus abuse of discretion distinction:

> The recent Supreme Court case which holds that a *de novo* standard of review is proper under some plans validates the prior law of this Circuit that the arbitrary and capricious standard of review is appropriate here. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989).  The court held that
>
> > a denial of benefits challenged under [29 U.S.C.A.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard <u>unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.</u>
>
> *Firestone*, 109 S. Ct. at 956.
>
> <u>The plan in this case does give the administrator of the plan</u> "<u>discretionary authority</u> to determine eligibility for benefits [and] to

---

context of challenging a plan administrator's claim decision—either *de novo* or arbitrary and capricious.  *Doyle*, 542 F.3d at 1359 ("As we now show, *Glenn* implicitly overrules and conflicts with our precedent requiring courts to review under the heightened standard a conflicted administrator's benefits decision.").

construe the [plan's] terms." *Id.*  For example, the plan states,

> As a condition precedent to coverage, it is agreed that whenever the Claims Administrator makes reasonable determinations in the administration of the [plan] (including, without limitation, determinations whether services, care, treatment, or supplies are Medically Necessary . . .) such determinations shall be final and conclusive.
>
> The plan's descriptive booklet, provided to covered employees, contains this language: "Blue Cross and Blue Shield of Alabama has the exclusive right to interpret the provisions of th[is] Plan, so its decision is conclusive and binding."  Accordingly, the arbitrary and capricious standard of review applies here. *Firestone*, 109 S. Ct. at 956; *Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 38-39 (11th Cir. 1989).

*Jett*, 890 F.2d at 1138-39 (emphasis added).  Therefore, under *Jett*, the court looked at the plan first and then the descriptive booklet when evaluating the standard of review issue.[9] *See also Cagle v. Bruner*, 112 F.3d 1510, 1517 ("Accordingly, we look to all of the plan documents to determine whether the plan affords the Fund enough discretion to make the arbitrariness standard applicable.") (emphasis added).[10]

---

[9]  In *Jett*, the parties agreed that the arbitrary and capricious standard of review applied. *Id.*, 809 F.2d at 1138 ("The parties agree that a court reviewing Blue Cross' denial of benefits under this plan must apply an arbitrary and capricious standard.")

[10]  Interestingly, in *Cagle,* the issue was whether the failure to include discretionary language in the descriptive booklet was determinative of the standard of review issue. *Id.*, 112 F.3d at 1517 ("In opposition, both Genesis and Bruner argue that the plan's Summary Plan Description ("SPD"), not other plan documents, must contain the discretionary language in order for the Fund to receive the deference required under the arbitrariness standard.  We reject that argument.").  The *Cagle*

In reliance upon its discretionary review argument, Amcor points <u>solely</u> to the contents of the 2006 Summary Plan Description ("SPD") for the Plan (*see* Doc. at Ex. A at Ex. 2 at 1), which provides in relevant part:

**Plan Administrator**

The Plan is administered by the Amcor PET Packaging USA, Inc. Employee Benefits Administrative Committee (the "Administrative Committee"). All questions and request for information about the Plan, its administration or your benefits should be addressed to the Administrative Committee. <u>The Administrative Committee and its representatives shall have maximum discretionary authority permitted by law to interpret, construe and administer the Plan, to make determinations regarding Plan participation, benefit eligibility and to determine the validity of benefit claims and resolve any claim disputes. The decision of the Administrative Committee and its representatives will be given the maximum deference permitted by law.</u>

(*Id.* at 13 (emphasis added)). Therefore, the SPD undoubtedly includes discretionary language.[11]

However, absent from either side's evidentiary submission is any language from the Plan (and the related trust agreement) which may mirror or disavow the contents of the SPD. Regardless, the provisions contained <u>in the Plan</u> are critical to

---

court went onto hold that the arbitrary and capricious standard applied because "[t]he Declaration of Trust in th[at] case reserve[d] 'full authority to determine eligibility requirements for benefits,' while the Rules and Regulations reserve[d] discretion in the Fund to interpret ambiguous sections of the plan." *Id.*

[11] Amcor <u>incorrectly</u> attributes this language to the Plan, rather than its true source, the SPD. (*See, e.g.*, Doc. 12 at 3-4).

the standard of review inquiry as *Firestone* holds, and *Jett* confirms.

Indeed, the SPD clarifies that it is not the controlling document, but rather that

the Plan is:

**FINAL NOTES**

This SPD is not the complete Plan, but is only a description of some of
the important provisions of the Plan in as non-technical language as
possible.  However, all the provisions which pertain to this Plan are
contained in the actual Plan document and related trust agreement.  <u>If
there is any inconsistency between this SPD and the official documents,
the Plan and the trust documents shall prevail and control in all cases</u>.
Furthermore, this SPD contains a summary of the provisions of the Plan
as of the date of publication.  There may be further revisions and
amendments from time to time as required by law or adopted at the
direction of the Company.  No one shall accrue any rights because of
any statement in or omission from this SPD, <u>nor shall any statement or
omission modify or affect the provisions of the Plan and trust
documents</u>.

(Doc. 9 at Ex. A at Ex. 2 at 16 (emphasis added)).

**B.     Application**

Based upon the above controlling authority in *Firestone* and *Jett*, the court

lacks a complete record from which to determine the appropriate standard of review

to apply in evaluating Ms. Douthard's REA claim under ERISA.  Further, because the

record lacks any information about <u>what the Plan and the related trust documentation</u>

<u>state regarding discretionary authority</u>, the court cannot possibly proceed to properly

evaluate the merits of the pending cross-motions for summary judgment, especially

as each party's position turns largely upon the level of deference that is owed to the

Plan Administrator in this case.

## V.      CONCLUSION

Accordingly, both motions are **DENIED WITHOUT PREJUDICE**.[12]

**DONE** and **ORDERED** this the 3rd day of August, 2009.


**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[12]  The court notes that the parties have more than sufficient time to refile their motions pursuant to a more developed record as the dispositive motion deadline is not until November 4, 2009.  (Doc. 6).