FILED

2010 Feb-04  PM 03:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **GLEN GLOVER, as the Administrator of the Estate of PEGGY DOUTHARD,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No.:  4:09-CV-65-VEH** |
| **AMCOR PET PACKAGING, USA, INC.,** | ) ) ) | |
| **Defendant.** | ) ) | |

---

## MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff Peggy Douthard ("Ms. Douthard") initiated this lawsuit against Defendant Amcor PET Packaging USA, Inc. ("Amcor") on  December 11, 2008, in the Circuit Court of Etowah County, Alabama.[1]  (Doc. 1 at Ex. A at Compl. at 1).  On January 13, 2009, Amcor removed this case to this court on the basis that it arises under the Employee Retirement Income Security Act of 1974  ("ERISA"), and more

---

[1]  On January 19, 2010, a party substitution occurred due to the death of Ms. Douthard.  (Doc. 43; *see also* Doc. 34).  As a result, Glen Glover, as the administrator of Ms. Douthard's estate is now the real party plaintiff.  (*Id.* at 1).  However, the court still uses Ms. Douthard's name (as opposed to Mr. Glover, as administrator, or Ms. Douthard's estate) when referring to the plaintiff within this memorandum opinion.

specifically the Retirement Equity Act of 1984 ("REA"), 29 U.S.C. § 1055, which is an amendment to ERISA. (Doc. 1). On December 14, 2009, Ms. Douthard filed an amended complaint against Amcor. (Doc. 33).

Before the court are the following pending motions: Ms. Douthard's Motion for Summary Judgment on Appropriate Standard of Review (Doc. 23) (the "Standard of Review Motion") filed on October 23, 2009; Amcor's Corrected Renewed Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment on Appropriate Standard of Review (Doc. 25) (the "Renewed Motion") filed on November 5, 2009; Ms. Douthard's Motion for Summary Judgment on Benefits (Doc. 27) (the "First Benefits Motion") filed on November 18, 2009; and Ms. Douthard's Second Motion for Summary Judgment on Benefits (Doc. 29) (the "Second Benefits Motion") filed on December 8, 2009.[2]

The parties have fully briefed these motions (*see, e.g.*, Docs. 24, 30, 32, 36,

---

[2] On September 3, 2009, the court denied without prejudice the parties' prior cross-motions for summary judgment. (Doc. 17). Ms. Douthard's First Benefits Motion and Second Benefits Motion are identical in their arguments. Ms. Douthard filed her Second Benefits Motion to clarify that she is seeking summary judgment on both counts included in her amended complaint, which was filed subsequent to her First Benefits Motion. The parties have stipulated that if Ms. Douthard wins as to count one (*i.e.*, retirement and savings benefits), then she also wins as to count two (*i.e.*, pension benefits). Similarly, if she loses on count one, then she also does on count two. (Docs. 35 at 7, 38, 40). The parties have further stipulated that the amount of benefits at issue equals a combined total of $173,996.31 for both counts. (Doc. 42 at 2 (*i.e.*, $171,074.55 for count one plus $2,921.76 for count two)).

37), and they are all now under submission.  For the reasons explained below, the court concludes that Ms. Douthard's Standard of Review Motion, First Benefits Motion, and Second Benefits Motion are all due to be granted.  Relatedly, Amcor's Renewed Motion is due to be denied.

## II.   BACKGROUND[3]

At the heart of the parties' dispute are whether Ms. Douthard is the widow of George Douthard ("Mr. Douthard") and whether Amcor properly paid the proceeds of Mr. Douthard's investment account to his named beneficiary—his daughter, Angela Douthard (hereinafter "Angela" or "Angela Douthard").  Ms. Douthard maintains that when Mr. Douthard passed away she was his widow because they were never legally divorced.  If this is true, then the REA mandates (in the absence of a prior written consent executed by that spouse agreeing to waive such benefit) that any "qualified preretirement survivor annuity shall be provided" to Ms. Douthard, as Mr. Douthard's surviving spouse.  29 U.S.C. § 1055(a)(2).  The record lacks any spousal waiver executed by Ms. Douthard.

Mr. Douthard died on September 6, 2005.  Mr. Douthard was employed by

---

[3]  Subject to some modifications, the court restates as its background here the same summary that it used when it denied without prejudice the parties' previously filed cross-motions for summary judgment.  (*See* Doc. 17 at 2-5 (footnotes and citations omitted)).

Amcor at the time of his death.  When he passed away, Mr. Douthard was also a participant in the Amcor PET Packaging Savings and Investment Plan (the "Plan") and held a retirement savings account governed by the Plan.  On October 6, 2004, Mr. Douthard modified the information that he had on file with Amcor's benefits department and named his daughter, Angela Douthard (who is unrelated to Ms. Douthard), as the beneficiary of this retirement savings account.

In April or May of 2006, Ms. Douthard contacted Amcor's benefits department, asserting that she was the widow of Mr. Douthard and seeking a distribution to her of his retirement assets.  As proof of her claim, Ms. Douthard provided to Amcor's benefits department a copy of a marriage license dated October 19, 1961, listing Mr. Douthard as the groom and Ms. Douthard as the bride.  Ms. Douthard also produced to Amcor's benefits department a certificate of marriage confirming their marriage on October 19, 1961.

Support for Angela Douthard's claim to the proceeds included a copy a marriage license issued by the State of Colorado on June 11, 1982, listing Mr. Douthard as the groom and JoAnn Williams (Angela's mother) as the bride, and Mr. Douthard's death certificate reflecting his marital status as widowed.  As Angela Douthard reported to Amcor, Ms. Douthard and her father, Mr. Douthard, were divorced in the early 1970s, and Angela Douthard's mother, JoAnn Williams, passed

4

away in June 1993.  However, the record lacks any evidence of a divorce decree or other court order dissolving the marriage between Mr. Douthard and Ms. Douthard.

Other proof favorable to Amcor's position (that payment to Angela Douthard was appropriate) were various tax forms and an Amcor job application dated April 2, 1979, that Mr. Douthard filled out in which he indicated his marital status as single as well as his last will and testament dated June 18, 2004, which contains the statement that "I am not married nor am I involved in a common law marital relationship."

In June 2006, Amcor's benefits department denied Ms. Douthard's claim and paid the Plan assets in the approximate amount of $170,700.53 to Angela. Ms. Douthard retained legal counsel and, on November 18, 2007, her attorney renewed Ms. Douthard's demand for the retirement proceeds.  Other correspondence and additional documentation in support of Ms. Douthard's claim then followed, including a claim made by Ms. Douthard in support of Social Security widow benefits and an affidavit executed by Ms. Douthard attesting that she had never divorced Mr. Douthard.  Amcor stood by its decision to pay Angela Douthard, and this lawsuit then followed.

## III.   STANDARD ON SUMMARY JUDGMENT[4]

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).[5]  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

"Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific

---

[4] Although there are cross-motions for summary judgment filed by both parties pursuant to Rule 56, the Eleventh Circuit recently noted that, due to the peculiar standards of review for ERISA cases, Rule 56 practice may be unnecessary.  *See Doyle v. Liberty Life Assur. Co.*, 542 F.3d 1352, 1363 n.5 (11th Cir. 2008).  Other district courts have similarly noted that the district court's role in an ERISA case is fundamentally different than its ordinary role as a trial court.  *See, e.g., Providence v. Hartford Life & Accident Ins. Co.*, 357 F. Supp. 2d 1341, 1342 n.1 (M.D. Fla. 2005) ("[T]he Court's task is to review the benefit decision based on the administrative record available to the decision maker at the time he or she made the decision.").

[5] Rule 56 was recently amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure. The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*." Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis supplied). Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc.*

*v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Although there are

cross-motions for summary judgment, each side must still establish the lack of

genuine issues of material fact and that it is entitled to judgment as a matter of law.

*See Chambers & Co. v. Equitable Life Assur. Soc. of the U.S.*, 224 F.2d 338, 345 (5th

Cir. 1955); *Matter of Lanting*, 198 B.R. 817, 820 (Bankr. N.D. Ala. 1996). The court

will consider each motion independently, and in accordance with the Rule 56

standard. *See Matsushita Elec. Indus. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-

88 (1986). "The fact that both parties simultaneously are arguing that there is no

genuine issue of fact, however, does not establish that a trial is unnecessary thereby

empowering the court to enter judgment as it sees fit." *See* WRIGHT, MILLER &

KANE, FEDERAL PRACTICE AND PROCEDURE § 2720, at 327-28 (3d ed. 1998).

## IV.   ANALYSIS

### A.   **Applicable Standard of Review**

As a threshold issue, the parties still dispute what is the appropriate standard

of review for the court to apply. Ms. Douthard maintains that *de novo* review is

called for while Amcor contends that discretionary or arbitrary and capricious review

is required.[6]

"While ERISA places the burden upon [Ms. Douthard] to prove an entitlement to [] benefits under the [Plan], *see Horton*, 141 F.3d at 1040, [Amcor] bears the burden of proving that the arbitrary and capricious standard of review applies." *See Anderson v. Unum Life Ins. Co. of America*, 414 F. Supp. 2d 1079, 1095 (M.D. Ala. 2006) (citing *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir.2002); *Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 229 (2d Cir. 1995)).   Based upon the more developed record, including a copy of the Plan and other materials discussed more fully below, the court agrees with Ms. Douthard that *de novo* review is proper.

As the Eleventh Circuit explained in *Jett v. Blue Cross and Blue Shield of Alabama, Inc.*, 890 F.2d 1137 (11th Cir. 1989), regarding the *de novo* versus abuse of discretion distinction:

> The recent Supreme Court case which holds that a *de novo* standard of review is proper under some plans validates the prior law of this Circuit that the arbitrary and capricious standard of review is appropriate here. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989).   The court held that

---

[6] As a result of the Supreme Court's decision in *Glenn v. Metro. Life Ins. Co.*, ___ U.S. ___, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008), as interpreted by the Eleventh Circuit in *Doyle*, only two ERISA standards of review now exist in  the context of challenging a plan administrator's claim decision—either *de novo* or arbitrary and capricious.   *Doyle*, 542 F.3d at 1359 ("As we now show, *Glenn* implicitly overrules and conflicts with our precedent requiring courts to review under the heightened standard a conflicted administrator's benefits decision.").

> a denial of benefits challenged under [29 U.S.C.A.] §
> 1132(a)(1)(B) is to be reviewed under a *de novo* standard
> <u>unless the benefit plan gives the administrator or fiduciary
> discretionary authority to determine eligibility for benefits
> or to construe the terms of the plan.</u>

*Firestone*, 109 S. Ct. at 956.

<u>The plan in this case does give the administrator of the plan
"discretionary authority</u> to determine eligibility for benefits [and] to
construe the [plan's] terms." *Id.* For example, <u>the plan states,</u>

> As a condition precedent to coverage, it is agreed
> that whenever <u>the Claims Administrator makes reasonable
> determinations in the administration of the [plan]
> (including, without limitation, determinations whether
> services, care, treatment, or supplies are Medically
> Necessary . . .) such determinations shall be final and
> conclusive.</u>

> The plan's descriptive booklet, provided to covered employees,
> contains this language: "Blue Cross and Blue Shield of Alabama has the
> exclusive right to interpret the provisions of th[is] Plan, so its decision
> is conclusive and binding." <u>Accordingly, the arbitrary and capricious
> standard of review applies here.</u> *Firestone*, 109 S. Ct. at 956; *Guy v.
> Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 38-39 (11th
> Cir. 1989).

*Jett*, 890 F.2d at 1138-39 (emphasis added). Therefore, under *Jett*, the court looked

at the plan first and then the descriptive booklet when evaluating the standard of

review issue.[7] *See also Cagle v. Bruner*, 112 F.3d 1510, 1517 ("Accordingly, we look

---

[7] In *Jett*, the parties agreed that the arbitrary and capricious standard of review
applied. *Id.*, 809 F.2d at 1138 ("The parties agree that a court reviewing Blue Cross'
denial of benefits under this plan must apply an arbitrary and capricious standard.")

to <u>all</u> of the plan documents to determine whether the plan affords the Fund enough discretion to make the arbitrariness standard applicable.") (emphasis added).[8]

In support of its Renewed Motion, Amcor has included a copy of the Plan, which provides in relevant part:

### 16.1   The Administrative Committee

As provided in subsection 1.5, the Plan is administered by the Administrative Committee.  The number and individual members of the Administrative Committee shall be determined in accordance with the Administrative Committee's bylaws.

### 16.2   The Administrative Committee's General Powers, Rights, and Duties

The Administrative Committee shall have all powers necessary and appropriate to discharge its duties under the Plan, subject to the limitations set forth in the Administrative Committee's bylaws, <u>which powers shall be exercised in the sole and absolute discretion of the Administrative Committee</u>, including, but not limited to, the following:

(a)   To construe and interpret the provisions of the Plan and to make factual determinations thereunder,

---

[8]   Interestingly, in *Cagle,* the issue was whether the failure to include discretionary language in the descriptive booklet was determinative of the standard of review issue. *Id.*, 112 F.3d at 1517 ("In opposition, both Genesis and Bruner argue that the plan's Summary Plan Description ("SPD"), not other plan documents, must contain the discretionary language in order for the Fund to receive the deference required under the arbitrariness standard.  We reject that argument.").  The *Cagle* court went on to hold that the arbitrary and capricious standard applied because "[t]he Declaration of Trust in th[at] case reserve[d] 'full authority to determine eligibility requirements for benefits,' while the Rules and Regulations reserve[d] discretion in the Fund to interpret ambiguous sections of the plan." *Id.*

> including the power to determine the rights or
> eligibility under the Plan of Employees, Participants,
> or any other persons, and the amounts of their
> benefits (if any) under the Plan, and to remedy
> ambiguities, inconsistencies or omissions, and such
> determinations by the Administrative Committee
> shall be binding on the parties.

(Doc. 25 at Ex. A at Ex. 3 at 56 (emphasis added)).  Therefore, the Plan confirms that the Administrative Committee is bestowed with discretionary authority in administering claims.

Consistent with the Plan, the contents of the 2006 Summary Plan Description ("SPD") for the Plan (*see* Doc. 25 at Ex. A at Ex. 5 at 1) also indicate that the Plan is administered by the Administrative Committee and supports the use of a discretionary standard <u>when a decision is made by that particular body</u>.  More specifically, the SPD provides in relevant part:

**Plan Administrator**

The Plan is administered by the Amcor PET Packaging USA, Inc. Employee Benefits Administrative Committee (the "Administrative Committee").  All questions and request for information about the Plan, its administration or your benefits should be addressed to the Administrative Committee.  <u>The Administrative Committee and its representatives shall have maximum discretionary authority permitted by law to interpret, construe and administer the Plan, to make determinations regarding Plan participation, benefit eligibility and to determine the validity of benefit claims and resolve any claim disputes. The decision of the Administrative Committee and its representatives will be given the maximum deference permitted by law.</u>

11

(*Id.* at 13 (emphasis added)).   Accordingly, the SPD undoubtedly includes discretionary language in the context of a claim determination made by the Administrative Committee.

Here, while the Administrative Committee retains full discretion, it is undisputed that it did not decide Ms. Douthard's claim; instead, the record reflects that  Michael Katz ("Mr. Katz"), as outside counsel for Amcor (Doc. 27 at Ex. 4 at Amcor-0010), and Joseph A. Zakrajsek ("Mr. Zakrajsek"), Amcor's Compensation and Benefits Manager and a member of the Administrative Committee, (Doc. 23-8 at 13 ¶ 1; Doc. 25 at Ex. A ¶¶ 1-2), were the only persons involved in the decision-making process concerning Ms. Douthard's claim.   As a result, in its Renewed Motion, Amcor attempts to establish the existence of a valid delegation of the Administrative Committee's authority under the Plan to Amcor's benefits department, including Mr. Zakrajsek.  (*See, e.g.*, Doc. 25 at 9-10 ¶ 23 ("The Committee's Bylaws state that 'it is expected that the Committee will delegate some of its Administrative Powers to others, particularly to the Manager, Benefits and Compensation and his or her staff.'") (footnote and citation omitted); *id.* at 10 ¶ 24 ("The Administrative Committee has delegated the day-to-day operation and administration of the Plan to Amcor's benefits department (the "Plan Administrator") (citation omitted)).

Ms. Douthard contends that any purported delegation of the Administrative

12

Committee's discretionary authority is ineffective.   Based upon a close inspection of

the applicable language from the Administrative Committee's bylaws as well as

relevant case law, including the Eleventh Circuit's decision in *Baker v. Big Star Div.*

*of the Grand Union Co.*, 893 F.2d 288 (11th Cir. 1989), this court determines that the

record lacks documentation substantiating a valid delegation of the Administrative

Committee's discretionary authority to decide claims.

The "DELEGATION OF RESPONSIBILITY" section of the Administrative

Committee's bylaws states in full:

> The Plans permit the delegation of fiduciary responsibilities by the
> Committee, as long as (i) the delegation is in writing and (ii) the person
> to whom duties are delegated acknowledges in writing that the person
> is a fiduciary with respect to the applicable Plan.   Under ERISA, if a
> fiduciary prudently delegates any of its responsibilities, the delegating
> fiduciary is not liable for the acts (or failures to act) of the person who
> accepts the delegation.   The delegating fiduciary does, however, remain
> liable for monitoring the actions of the fiduciary to whom the duty was
> delegated.
>
> In addition to delegation of fiduciary responsibilities, the Committee
> may delegate any of its non-fiduciary responsibilities.   With respect to
> a delegation of non-fiduciary responsibilities, it is not legally required
> that any such delegation be in writing, but it is strongly recommended
> that such delegations be made in writing.
>
> It is recognized that many of the Committee's Administrative Powers
> involve day-to-day administrative tasks associated with maintenance and
> operations of the Plans.   It is also recognized that it is impractical for
> members of the Committee to undertake all such activities.
> Accordingly, it is expected that the Committee will delegate some of its

13

> Administrative Powers to others, particularly to the Manager, Benefits and Compensation and his or her staff.   With respect to any Administrative Powers that are delegated, the Committee shall obtain reports from time to time from the delegatees, addressing the actions taken.

(Doc. 25 at Ex. A at Ex. 1 at 6-7 (emphasis added)).   Therefore, the bylaws require that a delegation of a fiduciary function be in writing and acknowledged by the purported delegatee.   In contrast, non-fiduciary functions, such as administrative tasks,  do not require a written document to be validly delegated.

However, Amcor has presented no evidence of a written delegation indicating that either Mr. Katz or Mr. Zakrajsek had accepted responsibility for conducting fiduciary activities on behalf of the Administrative Committee, such as resolving disputed claims before he or they dealt with Ms. Douthard.  *See Anderson*, 414 F. Supp. 2d at 1096 ("Unum is entitled to a deferential standard of review, whether that standard is the heightened one or the more deferential arbitrary and capricious standard of review, <u>only if it, or an authorized party, made the challenged benefits determination</u>.") (emphasis added).

As the Eleventh Circuit explained the fiduciary/non-fiduciary distinction with respect to determining the ERISA standard of review in *Baker*:

> Appellee Grand Union argues that, "[r]egardless of whether Connecticut General may be classified as a "fiduciary" under ERISA ... there is no dispute whatsoever that Grand Union had delegated to

14

Connecticut General the authority 'to determine eligibility for benefits.'" Appellee Grand Union would have us ignore the trust law principles upon which the *Bruch* decision is based and import greater significance to Justice O'Connor's use of the word "or" than is warranted. True, the Supreme Court held that a *de novo* standard applies unless "the benefit plan gives the administrator or fiduciary discretionary authority," *Id.* (emphasis added), <u>yet it is clear that an administrator with discretionary authority is a fiduciary</u>. *See* 489 U.S. at ----, 109 S. Ct. at 955, discussed *supra* at section I.

<u>Conversely, one who is not a fiduciary is also not "an administrator with discretionary authority</u>" under 29 U.S.C. § 1002(16)(A) and (21)(A). "<u>Administrators" are distinguished from "fiduciaries" by the former's lack of discretionary authority or discretionary control"; therefore, any entity or person found not to be an ERISA "fiduciary" cannot be an "administrator with discretionary authority" subject to the arbitrary and capricious standard</u>.

Grand Union makes essentially the same argument that was rejected by the Supreme Court in *Bruch*. In *Bruch*, Firestone "argue[d] that as a matter of trust law <u>the interpretation of the terms of a plan is an inherently discretionary function</u>." 489 U.S. at ----, 109 S. Ct. at 954. Similarly, Grand Union argues that since Connecticut General has the power to make initial eligibility determinations "'in accordance with the terms and conditions of the Plan,'" Connecticut General's role is "inherently discretionary."   As discussed above, Grand Union urges a far too facile reading of *Bruch* than can be sanctioned by this court. Just as Firestone's "inherently discretionary" task of construing its benefits plan terms was insufficient to support a more deferential standard of judicial review under trust law principles, <u>Connecticut General's "inherently discretionary" task of making initial eligibility determinations "according to the terms of the Plan" does not trigger the application of an arbitrary and capricious standard of review under *Bruch*</u>. *See Moon v. American Home Assur. Co.*, 888 F.2d 86 (11th Cir.1989) (rejecting a similar argument and finding that *de novo* standard of review applies). <u>Grand Union, not Connecticut General, was given the authority to review claim denials; nor was Connecticut</u>

General given the power to formulate policy or terms of eligibility under the Plan.

*Baker*, 893 F.2d at 291-92 (emphasis added).

Similar to *Baker*, in this instance, "[the Administrative Committee], and not [Mr. Katz or Mr. Zakrajsek ], was given the [fiduciary] authority to review claim denials; nor was  [Mr. Katz or Mr. Zakrajsek] given the [fiduciary] power to formulate policy or terms of eligibility under the Plan."  Further, no evidence of a written delegation of fiduciary authority to either Mr. Katz or Mr. Zakrajsek consistent with the Administrative Committee's express requirements under its bylaws exists in the record.  At best, Amcor has shown only that some of the non-fiduciary "day-to-day administrative tasks associated with maintenance and operations of the Plans" may have been delegated to Amcor's benefits department, including Mr. Zakrajsek.

As the district court similarly explained in *Anderson*:

On the other hand, if an unauthorized party made the benefits determination, the denial of plan benefits is reviewed under the *de novo* standard.  *See Rodriguez-Abreu v. Chase Manhattan Bank*, 986 F.2d 580, 584 (1st Cir. 1993); *see also Mazzacoli v. Continental Cas. Co.*, 322 F. Supp. 2d 1376, 1381 (M.D. Fla.2004) ("Eleventh Circuit precedent is clear that where an unauthorized party denies plan benefits, that denial is reviewed under the *de novo* standard.") (citing *Baker v. Big Star Div. of the Grand Union Co.*, 893 F.2d 288, 291 (11th Cir. 1989)).

An authorized party is one who has received a proper delegation

> of powers.  Pursuant to 29 U.S.C. § 1105, a plan administrator may delegate its fiduciary duties to a third party if the plan provides a clear process for such delegation.  As aptly explained by the First Circuit, 29 U.S.C. § 1105 "allows named fiduciaries to delegate responsibilities ... through express procedures provided in the plan.  To be an effective delegation of discretionary authority so that the deferential standard of review will apply, therefore, the fiduciary must properly designate a delegate for the fiduciary's discretionary authority." *Rodriguez-Abreu*, 986 F.2d at 584.

*Anderson*, 414 F. Supp. 2d at 1096 (emphasis added) (footnote omitted).

Therefore, neither Mr. Katz, Mr. Zakrajsek, nor Amcor's benefits department possessed the Administrative Committee's discretionary authority to determine disputed claims because no evidence of a proper delegation of such fiduciary responsibility exists in the record.  Accordingly, Ms. Douthard is correct that a *de novo* standard of review applies to the rejection of her surviving spouse claim.

**B.     Application**

**1.     *De Novo* Review**

Concerning *de novo* review, the Eleventh Circuit has explained:

> *De novo* review, which we employ in reviewing "no-discretion" plan decisions, offers the highest scrutiny (and thus the least judicial deference) to the administrator's decision. In fact, we accord no deference there, since, no judgment/discretion was exercised in making the determination (*i.e.*, there is no discretion to which we would defer).

*Williams v. BellSouth Telecommunications, Inc.*, 373 F.3d 1132, 1137 (11th Cir. 2004), *overruled on other grounds by Doyle, supra*, 542 F.3d at 1360 ("But we hold

that *Glenn* implicitly overrules our precedent to the extent it requires district courts to review benefit determinations by a conflicted administrator under the heightened standard.").  Further, under a *de novo* standard of review, the scope of evidence that this court may consider in reaching its decision is not limited to simply those facts that were before the administrator at the time of the decision.  *See Kirwan v. Marriott Corp.*, 10 F.3d 784, 789 (11th Cir. 1994) ("In this circuit, a district court conducting a *de novo* review of an Administrator's benefits determination is not limited to the facts available to the Administrator at the time of the determination.") (footnote omitted).

Having studied the record on a *de novo* basis, the court concludes that the rejection of Ms. Douthard's claim was wrong.  Relatedly, the court determines that the evidence establishes that Ms. Douthard is entitled to an award of benefits under the Plan as Mr. Douthard's surviving spouse.

In particular, the court relies upon the marriage license and certificate between Mr. Douthard and Ms. Douthard that are part of the record.  (Doc. 25 at Ex. A at Exs. 8, 9).  With respect to the marriage certificate in particular, the court notes that it is signed by the Judge of Probate and reflects a marriage date of October 20, 1961, and a recorded date of June 27, 1974.  (*Id.* at Ex. 9).  On summary judgment, Amcor has not challenged the authenticity or validity of this certificate.  (*See, e.g.*, Doc. 25 at 6

18

¶ 6 ("Plaintiff also enclosed a Certificate of Marriage which purports to show that George and Peggy Douthard were in fact married on October 19, 1961)); *see also* Ala. Code § 30-1-13 ("A certified copy [of a marriage certificate] is presumptive evidence of the fact [of marriage]").

The court also bases its decision upon the affidavit of Ms. Douthard, executed on September 18, 2008, in which she swears that, although she and Mr. Douthard became separated in 1971, she was "unaware that [her] husband [had] married a second time" and that he "had a daughter" until her lawyer told her, and she is "<u>certain</u> that [she] never received a divorce from [her] husband." (Doc. 25 at Ex. A at Ex. 19 at 1-2 (emphasis added)). Ms. Douthard also explains that she and Mr. Douthard had two children together, Alando and Damonn, and that, beginning around 1971, "[t]he boys lived with [her] husband in Denver every summer." (*Id.* at 1). Ms. Douthard also documents her efforts to advise Amcor about her claim for benefits as Mr. Douthard's surviving spouse. (*Id.*).

This sworn-to and detailed evidence is in sharp contrast to the vaguely-worded hearsay statement contained in Mr. Zakrajsek's affidavit in which he states that Angela Douthard "also informed [him] that George and Peggy Douthard were divorced in the early 1970s." (*Id.* at Ex. A ¶ 11). Further, nowhere in the record does Angela Douthard, or any another witness, provide an affidavit or declaration that

establishes the occurrence of a divorce between Ms. Douthard and Mr. Douthard, including when it took place and in which jurisdiction.  Thus, Amcor has failed to rebut Ms. Douthard's affidavit with any head-on admissible evidence establishing that Ms. Douthard and Mr. Douthard ever obtained a divorce.

Relatedly, the various tax forms and the Amcor job application dated April 2, 1979, that Mr. Douthard filled out in which he showed his marital status as single as well as his last will and testament dated June 18, 2004, in which he indicated that "I am not married nor am I involved in a common law marital relationship" are insufficient to overcome the undisputed affidavit evidence from Ms. Douthard confirming the ongoing status of her marriage to Mr. Douthard.

First, Mr. Douthard's Amcor job application does not reflect that it was signed, much less done so under oath.  (Doc. 25 at Ex. A at Ex. 11).  Second, the tax forms executed by Mr. Douthard certify only that:

> Under penalties of perjury, I certify that <u>I am entitled to the number of withholding allowances claimed on this certificate</u> or, if claiming exemption from withholding, that <u>I am entitled to claim the exempt status</u>.

(Doc. 25 at Ex. A at Ex. 12; *id.* at Ex. 13 at 1-2 (emphasis added)).  Therefore, the marital status information is not included within the contents of the tax form certification.

20

Also, the marital status section instructs the taxpayer to "*check the Single box*" "*If married, but legally separated*[.]"  (Doc. 25 at Ex. A at Ex. 12; *id.* at Ex. 13 at 1-2).  As Ms. Douthard has sworn that she and Mr. Douthard were separated in 1971, the fact that Mr. Douthard indicated in 1998 (after his second wife died) that he was single is subject to more than one interpretation, and regardless does not affirmatively establish <u>under oath</u> that Mr. Douthard ever divorced Ms. Douthard.  (Doc. 25 at Ex. A at Ex. 13 at 2).

Third, the declaration contained in Mr. Douthard's will states:

I, GEORGE G. DOUTHARD, the Testator, sign my name to this instrument this 18th day of June, 2004, and being first duly sworn, do hereby <u>declare</u> to the undersigned authority <u>that I sign and execute this</u> instrument as my Last Will and that <u>I sign it willingly</u>, <u>that I execute it</u> <u>as my free and voluntary act for</u> the purposes therein expressed, and <u>that</u> <u>I am eighteen years of age or older, of sound mind, and under no</u> <u>constraint or undue influence</u>.

(Doc. 25 at Ex. A at Ex. 14 at 7 (emphasis added)).  Accordingly, Mr. Douthard does not attest to the truth of any statements made in his will, but rather only about age, his state of mind, and the voluntariness of his signature.

In summary, the information included in the administrative record and relied upon by Amcor on cross-motions for summary judgment is insufficient to create a triable issue as to the continued validity of Ms. Douthard's marriage to Mr. Douthard. Accordingly, Ms. Douthard is entitled to summary judgment.

Alternatively, summary judgment in favor of Ms. Douthard is appropriate because, for the most part, Amcor bases its position on summary judgment with respect to Ms. Douthard's claim for benefits entirely upon the arbitrary and capricious standard of review and makes only nominal efforts to oppose summary judgment under a *de novo* standard. For example, in its opening brief, although Amcor initially argues that the benefits decision was *de novo* correct (Doc. 25 at 13-15), the bulk of its brief is devoted to arbitrary and capricious review. (Doc. 25 at 15-29; *id.* at 15 ("Even if one were to assume *arguendo* that the Plan Administrator's decision was *de novo* wrong, the Court's inquiry would not stop there."); *id.* at 29 ("Rather, the undisputed evidence shows that the Plan Administrator's decision to deny Plaintiff's claim for benefits was neither arbitrary nor capricious.")).

Also, in its opposition to Ms. Douthard's First Benefits Motion, Amcor does not even attempt to analyze the record under a *de novo* standard; instead it only contends that *de novo* review should not apply. (*See* Doc. 30 at 16-19; *id.* at 19 ("Rather, the undisputed evidence shows that the Plan Administrator's decision to deny Plaintiff's claim for benefits was neither arbitrary nor capricious.")). The court is under no independent obligation to develop grounds in opposition to summary judgment on behalf of Amcor as "the onus is upon the parties to formulate arguments[.]" *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.

1995) (citation omitted); *see also Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment). Therefore, the paucity of Amcor's response to a *de novo* assessment of its treatment of Ms. Douthard's claim essentially concedes the issue and provides further justification for the entry of summary judgment in favor of Ms. Douthard.

### 2.    Arbitrary and Capricious Review

While this court has concluded that the appropriate standard of review is *de novo*, this court alternatively determines that summary judgment in favor of Ms. Douthard is called for even under the more deferential arbitrary and capricious standard. "A decision to deny benefits is arbitrary and capricious <u>if no reasonable basis exists for the decision</u>." *Shannon v. Jack Eckerd Corp.*, 113 F.3d 208, 209 (11th Cir. 1997) (emphasis added) (citing *Jett*, 890 F.2d at 1139).

Here, no reasonable basis exists in the administrative record for Amcor's handling of the competing claims made by Ms. Douthard and Angela over Mr. Douthard's retirement benefits. In particular, the court cannot understand why Amcor did not proceed with an interpleader lawsuit and pay the disputed funds into court when it first learned of the conflict between Ms. Douthard and Angela over Mr. Douthard's account. *See, e.g., DaimlerChrysler Corp. Healthcare Benefits Plan v.*

*Durden*, 448 F.3d 918, 920 (6th Cir. 2006) ("This appeal involves an interpleader action filed by a pension plan seeking a declaration of which of two claimants is decedent, Douglas Durden's [,] surviving spouse."); *Metropolitan Life Ins. Co. v. Hardin*, 23 F. Supp. 2d 934, 935 (S.D. Ind. 1998) ("MetLife then filed this interpleader action to resolve the conflicting claims."); *cf. Dunlap v. BellSouth Telecommunications, Inc.*, 431 F. Supp. 2d 1210, 1216 (M.D. Ala. 2006) ("Second, BellSouth says it has discharged its obligations under the plans <u>by making payment to Donna Lynn in good faith with no notice of a competing claim</u>, and is therefore discharged from any further liability.") (emphasis added); *Dunlap*, 431 F. Supp. 2d at 1217 ("Reviewing information available when Curtis died, <u>BellSouth had no evidence indicating that Marion was the surviving spouse</u>.").

Instead, Amcor blindly accepted, without conducting a good faith investigation, the hearsay and ambiguously-worded statement made by a purported beneficiary (with a direct financial interest in the outcome and without any indication that she possessed personal knowledge of the material facts) to Mr. Zakrajsek about the status of her father's first marriage to Ms. Douthard over the evidence of a valid marriage certificate from Ms. Douthard. In fact, the record shows that it was not until October 13, 2008 (after Amcor had already rejected Ms. Douthard's claim and she had retained legal counsel) that Amcor even asked Angela if she "[w]ould [] possibly

know where Peggy and George were divorced or have a copy of the divorce decree?"[9] (Doc. 27-7 at Amcor-0070).  Further, for the reasons discussed in section IV.B.1, *supra*, the additional records that Amcor relies upon do not contradict the ongoing validity of Mr. Douthard's marriage to Ms. Douthard.

Also, this court notes, that as of January 4, 2006, Mr. Zakrajsek expressed concern to Mr. Katz about "[t]his case [] becoming more complicated and time consuming than originally expected but" reassured Mr. Katz that "it [was] Amcor's intent to reimburse in full the cost of [his] firm's services."  (Doc. 27-6 at Amcor-0059).  Therefore, perhaps a concern over the additional costs associated with administering Mr. Douthard's retirement benefits explains Amcor's rashness in rejecting Ms. Douthard's competing claim, which Mr. Zakrajsek subsequently became aware of on or about May 18, 2006, when he received a copy of the marriage license between Ms. Douthard and Mr. Douthard.  (Doc. 27-3 at Amcor-0004 ("As if this case can't get any stranger, I received in the mail yesterday a copy of  a marriage license that shows the groom as George Douthard and the bride as Peggy Carol Know.") (emphasis added); *id.* ("I can send this to you for your file, but if this person is really his spouse, which I cannot determine at this point, this adds a whole

---

[9] Apparently, this particular request of Angela did not prove to be fruitful for Amcor or more specific information about the supposed divorce between Ms. Douthard and Mr. Douthard would have been filed by it on summary judgment.

new complexity to the case.") (emphasis added); *id.* ("I do not know now who may be entitled to these funds.") (emphasis added)).

Furthermore, this court agrees with Ms. Douthard that the record's silence about her rights under REA illustrates the unreasonableness of Amcor's handling of her claim. Particularly bothersome to this court is an email from Mr. Katz sent in response to a message from Mr. Zakrajsek dated June 27, 2006, which establishes that Amcor's "legal strategy" was apparently to let Ms. Douthard's time run out on claiming the disputed funds under Colorado law, rather than verify the legitimacy of her status as Mr. Douthard's widow, and relatedly, as an REA claimant:

> Joe:
>
> Sorry for not getting back to you promptly on this. Please feel free to distribute the funds to the named beneficiary. Because of the possible emergence of a former spouse claiming the money, I wanted to make sure that the time limitation for a spouse filing had expired under Colorado law.
>
> Under CRS 15-11-205, a spouse has the later of nine months after date of death or six months after appointment of the personal representative of the estate to file for the augmented estate election. George died on September 6, 2005 so the magic date would be June 6, 2006. We know the personal representative was appointed on October 4, 2005, adding six months would make it April 4, 2006. Therefore, the latest date of June 6 is now gone so there should be no concern about paying out the money.

(Doc. 27-3 at Amcor-0010 (emphasis added)).

Delaying payment in the hopes of extinguishing Ms. Douthard's potential rights as a former spouse under Colorado law, rather than investigating the validity of her REA claim under federal law as the widow of Mr. Douthard, constitutes arbitrary and capricious conduct. Relatedly, the record conclusively establishes that Ms. Douthard was not afforded "a reasonable opportunity for a full and fair review" of her claim, in contradiction of the Plan's express requirements regarding benefit determinations. (Doc. 25 at Ex. A at Ex. 3 at 58 § 16.9; *see also* Doc. 27-3 ("I would like to close the George Douthard death file . . . . I heard no more from the former ex-spouse of Mr. Douthard, so I am comfortable with moving forward.")). Accordingly, summary judgment in favor of Ms. Douthard is alternatively proper even under the less demanding arbitrary and capricious standard.

## V.   CONCLUSION

In sum, Ms. Douthard's Standard of Review Motion, First Benefits Motion, and Second Benefits Motion are due to be granted, and Amcor's Renewed Motion is due to be denied. Alternatively, summary judgment in favor of Ms. Douthard is appropriate under the less stringent arbitrary and capricious standard. The court will enter an order consistent with this memorandum opinion.

**DONE** and **ORDERED** this the 4th day of February, 2010.


**VIRGINIA EMERSON HOPKINS**
United States District Judge